UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:25-CV-00563-MEO-DCK

| | |
|---|---|
| JI LI,<br><br>        Plaintiff,<br><br>        v.<br><br>HONEYWELL INTERNATIONAL, INC.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     MEMORANDUM & ORDER |

THIS MATTER is before the Court on Defendant Honeywell International Inc.'s Motion to Dismiss. (Doc. No. 15). For the reasons set forth below, the Court will grant the motion and dismiss the Complaint.

## I.    BACKGROUND

Plaintiff, a U.S. citizen of Chinese ancestry, lived and worked in Shanghai, China. (Doc. No. 1 ¶¶ 6, 66). As an American citizen, Plaintiff held China's Class A work permit to work in China. *Id.* ¶¶ 19, 41). On May 27, 2019, Plaintiff signed an employment contract with Honeywell (China) Co. Ltd. ("Honeywell (China)") to work in Shanghai as Vice President and General Counsel ("2019 Employment Contract"). *Id.* ¶ 16; *see id.* ¶ 7. Honeywell (China) is a wholly owned subsidiary of Defendant Honeywell International Inc.[1] *Id.* ¶ 7. As Vice President and General Counsel for the Asia-Pacific region, Plaintiff regularly reported to Honeywell's executive leaders in

---

[1] The Court uses the term "Honeywell" when referring collectively to both Honeywell (China) and its parent Honeywell International, Inc., in this Order.

North Carolina, including the corporate General Counsel, Chief Financial Officer, Chief Compliance Officer, and Chief Auditor. (*Id.* ¶¶ 6, 9).

The 2019 Employment Contract contained a forum-selection clause requiring that any dispute related to the 2019 Employment Contract follow the procedure outlined in the agreement, including mediation, arbitration before the Shanghai Labor and Human Resources Disputes Arbitration Commission ("Shanghai Labor Commission"), and finally, filing with the People's Court of Shanghai. (Doc. No. 16-1 at 21–22 (original with translations), 38 (Wu translation) ("Labor Disputes")).[2]

On January 11, 2022, Plaintiff signed a new employment contract with Honeywell (China) ("2022 Employment Contract"). (Doc. No. 1 ¶ 18). The 2022 Employment Contract contains a forum-selection clause that "shall apply" to require that any dispute related to the contract follow the procedure outlined in the agreement, which includes mediation, arbitration before the Shanghai Labor Commission, and lastly, filing with the People's Court of Shanghai, China. (Doc. No. 16-1 at 55–56 ("Labor Disputes")). The 2022 Employment Contract also provided that it "shall be terminated" for certain enumerated reasons, including if Plaintiff "reaches the retirement age stipulated by Chinese laws." *Id.* at 3 ¶ 12; *id.* at 65 (Wu translation) ("Termination and Expiration of Contract"); *see also id.* at 49–50 (original with translations). The 2022 Employment Contract further provides that

---

[2] The Wu Declaration's translation ("Wu translation") of any of the referenced or quoted contractual provisions or language differs slightly from the original translations to the contracts or language, but the differences are not material for purposes of this analysis.

Plaintiff's "retirement age and matters related to retirement are subject to relevant laws and regulations of the People's Republic of China." *Id.* at 70; *see also id.* at 54.

Effective January 12, 2023, Plaintiff accepted a promotion from Honeywell (China) to "Vice President and General Counsel" and executed the 2023 Offer Letter on February 17, 2023. (Doc. Nos. 1 ¶ 20; 16-1 at 76).[3] Like in the 2022 Employment Contract, the 2023 Offer Letter for this promotion states, "Your retirement age and retirement related matters will be applicable to PRC Laws and Regulations." (Doc. No. 16-1 at 81). It also contains the same forum selection clause as the 2022 Employment Contract, with the same "shall apply" language. *Id.* at 83. In addition, it provides Plaintiff was eligible for severance except if her contract was terminated for certain specified "Causes," which included "Reach[ing] the legal retirement age of the People's Republic of China." *Id.* at 92, 80.

On September 30, 2024, Honeywell informed Plaintiff that her employment contract would terminate on her 55th birthday—October 10, 2024—when she would reach China's "mandatory" retirement age. (Doc. No. 1 ¶ 25). Honeywell asserted that Chinese law did not allow her to work past 55-years-old. *Id.* Plaintiff responded that Honeywell should not enforce China's mandatory retirement age against her as a U.S. citizen working in Shanghai under China's Class A work permit. *Id.* ¶¶ 26, 41. Honeywell proceeded to terminate Plaintiff's contract on October 10, 2024, without severance. *Id.* ¶¶ 25, 35–36.

---

[3] The Court refers in this Order to the 2019 Employment Contract, the 2022 Employment Contract, and the 2023 Offer Letter collectively as "the Contracts."

In December 2024, Plaintiff, through counsel, filed an arbitration claim against Honeywell (China) with the Shanghai Labor Commission. (Doc. Nos. 16-1 at 5 ¶ 28; *id.* at 119–26; 20 ¶ 2). Plaintiff sought damages for the alleged breach of her employment contract and employment termination, which included claims for executive severance, a 2024 annual incentive bonus, a cash incentive portion of an annual long-term incentive compensation award, and compensation for the loss of certain stock options and restricted stock units. (Doc. No. 16-1 at 124). On January 22, 2025, the Shanghai Labor Commission denied all of Plaintiff's claims. (Doc. No. 16-1 at 6; 127–44; (Doc. No. 20 at 2). Plaintiff appealed that decision by filing a lawsuit with the People's Court of Shanghai, China in February 2025. (Doc. No. 16-1 at 6 ¶ 31). That suit remained pending at the time this matter was briefed.

Plaintiff filed an EEOC charge on March 27, 2025, received a right-to-sue notice on May 6, 2025, and commenced this action on July 30, 2025. (Doc. Nos. 1; 1-1 at 3–8). Plaintiff asserts claims for: (1) wrongful termination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; (2) wrongful denial of severance under the ADEA; (3) race ancestry discrimination in contract enforcement under 42 U.S.C. § 1981; and (4) wrongful discharge in violation of North Carolina public policy, N.C. Gen. Stat. § 143-422.1 *et seq.* (Doc. No. 1 at 12–17).

## II.   ANALYSIS

A plaintiff's choice of forum generally warrants considerable deference. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

However, where the parties have agreed to a mandatory forum selection clause, the calculus changes. A valid forum selection clause is "given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 62–63 (2013) (citation omitted). Even where the contractually selected forum is not the most "convenient," a forum selection clause still generally prevails. This is because "[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting." *Id.* at 64.

### a. Whether the Forum Selection Clause Is Mandatory and Covers Plaintiff's Claims

The Contracts[4] list specified dispute resolution procedures that "shall apply," with arbitration and litigation limited to specific Chinese forums. "Shall apply" is a clear term with a plain meaning that Plaintiff—a General Counsel—should have had no difficulty understanding. Further, Plaintiff has not alleged that the Contracts, or this particular provision, are somehow invalid or unenforceable. The Fourth Circuit has held that where language designating a specified forum "is mandatory, then *Atlantic Marine* controls and [Plaintiff] bears the burden of proving why it should not

---

[4] "In considering the *forum non conveniens* factors, the court is not limited to the allegations of the . . . complaint but may rely on evidence presented by the parties." *Jacobs Vehicle Sys., Inc. v. Yang*, No. 1:12CV00181, 2013 WL 4833058, at \*3 (M.D.N.C. Sept. 10, 2013) (citing *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.,* 806 F.Supp.2d 712, 724 (S.D.N.Y.2011)); *see also Sec'y of State For Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007) ("We may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." (citation omitted)).

5

be enforced." *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 471–72 (4th Cir. 2018), *as amended* (Mar. 27, 2018).

Plaintiff seeks to evade the forum selection clause by arguing that the clause does not cover all her claims. The Contracts state that the forum selection clause "shall apply" to "any dispute in relation to" the Contracts. *See* (Doc. No. 16-1 at 83). A forum selection clause covering disputes "in relation to" a contract "embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988).

Therefore, the question is whether there is a "significant relationship" between Plaintiff's claims and the Contracts. Here, the relationship is unavoidable. Plaintiff's Complaint alleges that "[t]wo clauses in Ms. Li's employment contract blatantly violate the ADEA"; that the 2023 Offer Letter's "Cause" definition "blatantly violates the ADEA"; and that Defendant "relied on Section C Article 6(b) of her offer letter to deprive Ms. Li of her executive severance package." (Doc. No. 1 ¶¶ 3–4). Plaintiff thus argues that the contractual language is discriminatory on its face and that Defendant enforced those Contracts against her. But where a contract itself is the alleged instrument of discrimination, the discrimination claim cannot be disentangled from the contract—they are inherently related.

Plaintiff's reliance on *Norman v. Call-A-Nurse, LLC*, No. 1:16cv1388, 2017 WL 10844694 (M.D.N.C. Aug. 11, 2017), and *Tiedeman v. EyeOne P.L.C.*, No. 5:23-mc-011, 2024 WL 2059085 (W.D. Va. May 8, 2024), is misplaced. In *Norman*, the court

6

declined to apply a similar clause because "none of the listed bases for termination address, in any way, conduct which serves as the basis for the statutory claims"—the contract was silent on discrimination. 2017 WL 10844694, at *4. In *Tiedeman*, the discrimination claim did "not bear a significant relationship to the terms of the Employment Agreement." 2024 WL 2059085, at *7. In direct contrast, here the retirement-age provisions of the Contracts are the alleged discriminatory act. The clause covers Plaintiff's claims.

### b. Whether There Are Exceptional Circumstances

Because the forum selection clause is mandatory and covers Plaintiff's claims, Plaintiff bears the burden of demonstrating "exceptional circumstances" to override it. *See Atl. Marine*, 571 U.S. at 62–63. Plaintiff must make "a clear showing" that it is "'unreasonable' under the circumstances" to enforce the forum selection clause. *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996).

> Choice of forum and law provisions may be found unreasonable if (1) their formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

*Id.*

Plaintiff does not allege fraud or overreaching, and no evidence has been presented on this issue. Further, Plaintiff has been actively litigating claims in China involving the termination of her contract since December 2024, availing herself of her day in court. Many key witnesses are in China rather than the United States,

7

including the President of Honeywell (China), with whom Plaintiff regularly worked, and her direct reports and the remainder of her legal team. (Doc. No. 16-1 at 6–7). This factor falls short of the exceptional circumstance that would warrant overriding a mandatory forum selection clause for grave inconvenience or unfairness of the selected forum. This leaves two remaining possibilities for exceptional circumstances: deprivation of a remedy based on fundamental unfairness of the chosen law, and contravention of strong public policy.

### i. Fundamental Unfairness of the Chosen Law

Plaintiff seeks monetary damages arising from her loss of employment from Honeywell, just as she has sought in the Chinese forum. The mere fact that foreign law is "different from North Carolina law . . . does not mean that Plaintiff will be deprived of 'a remedy,' even if it is not the same remedy that North Carolina law would afford." *Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG*, 560 F. Supp. 2d 432, 440 (W.D.N.C. 2008) (quoting *Allen*, 94 F.3d at 928). Further, in *Precision Weather Sols. Inc. v. Farmers Edge Inc.*, the Fourth Circuit affirmed dismissal for *forum non conveniens* even absent a forum selection clause. No. 22-1070, 2023 WL2158368, at *3 (4th Cir. Feb. 22, 2023) (unpublished). In so doing, the court found that it was not "a case in which it can be said that the remedy provided by the foreign forum is so empty that it amounts to 'no remedy at all,'" where the plaintiff had already asked the foreign court "to grant it meaningful relief." *Id.* (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981)); *see Piper Aircraft*, 454 U.S. at 247 ("The Court of Appeals erred in holding that plaintiffs may defeat a motion to dismiss

on the ground of *forum non conveniens* merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum.").

Plaintiff cannot meet this demanding standard, as she has a remedy in China. Plaintiff has been actively litigating in the Shanghai People's Court—the very forum the parties agreed upon—seeking damages arising from the same termination, under the same Contracts, based on the same facts that underlie her claims here. Plaintiff argues that China's courts cannot apply the ADEA, and they provide no age discrimination remedy specifically. The Court does not doubt this, considering Chinese law requires Chinese women in Plaintiff's profession to stop working at age 58 (age 55 at the time Plaintiff was terminated). But the absence of an ADEA-equivalent remedy does not mean China provides "no remedy at all." *Piper Aircraft*, 454 U.S. at 254. China may not provide Plaintiff her preferred cause of action, but it certainly provides a remedy—one which Plaintiff sought in China before she filed this case. *See, e.g.*, *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 250–52 (holding in case with no forum selection clause that China provides adequate remedy, even though Chinese courts could not replicate U.S. tort law).

Regarding civil-rights-specific claims, where the foreign forum does not have the plaintiff's preferred civil rights law, courts have upheld forum selection clauses. *See du Quenoy v. Am. Univ. of Beirut*, No. 18 Civ. 6962, 2019 WL 4735371, at *6 (S.D.N.Y. Sep. 27, 2019), *aff'd*, 828 F. App'x 769 (2d Cir. 2020) (forum selection clause upheld involving claims of discrimination, breach of contract, and intentional

infliction of emotional distress where Lebanon had "no civil rights laws of any kind" but offered "the right to bring a civil suit"); *Iskandar v. Am. Univ. of Beirut*, No. 98 Civ. 6616, 1999 WL 595651, at \*3 (S.D.N.Y. Aug. 9, 1999) (in age discrimination and breach of contract case, court enforced forum selection clause requiring plaintiff to litigate claims in Lebanon despite Lebanon not providing same remedies as United States).

Chinese law affords Plaintiff contract claims, wrongful termination claims, and even (as Plaintiff's "Hu Declaration" discloses) race discrimination claims under the Employment Promotion Law. *See* (Doc. No. 20 ¶ 9). Further, Defendant points to other provisions of Chinese law that appear to protect civil rights, including various provisions of the Civil Code of the People's Republic of China incorporating "the principle of fairness" in wrongful termination of contract cases and providing that "[i]f civil rights and interests are infringed, the infringed party has the right to request the infringer to bear infringement liability."[5] And China has its own body of employment contract law governing termination of employment contracts. *See* Labor Contract Law of the People's Republic of China (adopted by the Standing Comm. of the Nat'l People's Cong., June 29, 2007, effective Jan. 1, 2008), *available at* https://natlex.ilo.org/dyn/natlex2/r/natlex/fe/details?p3_isn=76384, Ch. IV. Even

---

[5] *See* (Doc. No. 16 at 22) (quoting Civil Code of the People's Republic of China, (adopted by the National People's Cong., May 28, 2020, effective Jan. 1, 2021), *available at* https://natlex.ilo.org/dyn/natlex2/r/natlex/fe/details?p3_isn=111290, part 1, ch. 5, art. 120 (China), and citing Civil Code of the People's Republic of China, part 3, ch. 4, art. 533).

though there might not be a Chinese analog of the ADEA, Plaintiff still has not demonstrated that she is deprived of a remedy in China.

The Court finds that enforcement of the forum selection clause would not deprive Plaintiff of a remedy based on fundamental unfairness of the chosen law.

### ii. Public Policy Considerations

Plaintiff argues that North Carolina public policy should be "broadly interpreted" to apply here because Plaintiff, "an American citizen, should not be deprived of her right to be protected from discrimination by her North Carolina employer—who engaged in illegal conduct in North Carolina." (Doc. No. 19 at 32). Defendant counters that "North Carolina has no strong public policies against enforcing a forum selection clause mandating suit in China—which was bargained and agreed to in China between a Chinese company and Plaintiff, a Chinese native who worked as General Counsel exclusively in China, interpreted under Chinese law." (Doc. No. 16 at 23).

Defendant is headquartered in North Carolina, where this action was filed. In this context, its arguments for dismissal under *forum non conveniens* carry less weight. One's home forum can rarely be said to be inconvenient.[6] However, in light of the mandatory forum selection clause, this fact does not alter the calculus. Both parties make general public policy arguments, and neither points to a strong public

---

[6] The convenience of one's home field certainly does not guarantee success. Consider the 2019 Detroit Tigers, who had the worst single-season home record since 1950 when they went 22–59 (a .272 winning percentage) at home.

policy covering the facts of this case. Therefore, the Court does not find enforcement of the forum selection clause would contravene a strong public policy of North Carolina. *See Allen*, 94 F.3d at 928.

Because there are no exceptional circumstances, the mandatory forum selection clause controls, and this action must be dismissed based on the doctrine of *forum non conveniens*.[7] The proper forum for Plaintiff's claims is China.

## III.   CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss (Doc. No. 15) is **GRANTED**; and this matter is hereby **DISMISSED WITH PREJUDICE** on the basis of *forum non conveniens*.

**SO ORDERED.**

Signed: June 11, 2026

Matthew E. Orso
United States District Judge

---

[7] The Court observes that Plaintiff's ADEA claims appear time-barred, and her additional claims appear to fail under Rule 12(b)(6). Because the Court dismisses this action based on *forum non conveniens*, it does not reach the merits of these claims.